## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DEANGELO SCOTT**<br>2905 Pomeroy Rd, SE, #201<br>Washington DC 20020<br><br>and<br><br>**RYAN PRATT**<br>2905 Pomeroy Rd, SE, #201<br>Washington DC 20020<br><br>Plaintiffs<br><br>   v.<br><br>**GOVERNMENT OF THE DISTRICT OF COLUMBIA**<br>SERVE:<br>Mayor Vincent Gray<br>Designee Darlene Fields<br>Civil Litigation Division, Ste 6000 South<br>441 4th Street, NW<br>Washington, DC 20001<br>202-724-6507<br><br>Defendant. | Civil Action No.: |

## CLASS ACTION

## COMPLAINT FOR JUDGMENT AND MONEY DAMAGES AND INJUNCTIVE RELIEF AND EQUITABLE RELIEF AND DECLARATORY RELIEF AND JURY DEMAND

## (§ 1983 Civil Rights Claims)

## Introduction

1.          DeAngelo Scott and Ryan Pratt on behalf of themselves and the Post & Forfeit Class (defined below) bring this action against the Government of the District of Columbia (the "District") for injuries suffered by them because of the MPD's practice during the Class Period[1] of arresting thousands of citizens each year for "officer initiated" "nuisance" type offenses such as disorderly conduct and possession of an open container of alcohol in public ("POCA") for which there was no probable cause or likelihood of prosecution and then forcing them to "post and forfeit" (that is to pay a fine, usually $35.00) to secure their release instead of releasing them outright because the arrest lacked probable cause or releasing them from the station on citation release or collateral release as the law required.

2.          The MPD forced the arrestees to "post and forfeit" because if the arrestees did not pay the "post and forfeit" fine, the MPD held them overnight or over the weekend (depending on the next court day) without offering them citation release or collateral release as the law required and then transported them to Superior Court knowing the case would be "no papered" (declined for prosecution) because the arresting officers had not referred the arrest for prosecution or had not taken other steps to assist in the prosecution or because the officers knew the prosecution would be rejected because the arrest lacked probable cause.

3.          The practice injured Mr. Scott and Mr. Pratt and the members of the Post & Forfeit Class by depriving them of their liberty while their "post and forfeit" was being processed and it also deprived them of the "post and forfeit" amount they had to pay.  It also left

---

[1] The Class Period runs from December 15, 2007, the start of the Class Period in <u>Fox, et al. v. Government of the District of Columbia, et al</u>, 10- 2118 (ABJ/JMF)(judgment entered as to Mr. Fox's class claims on 2/28/2014 [89]), until a point in time to be determined in this litigation but at least February 2011 when the Mayor and City Council amended the disorderly conduct statute and the District of Columbia Metropolitan Police Department (the "MPD") discontinued the practice of limiting release options to persons who "post and forfeit" to an election between "post and forfeiting" and spending a night in jail.

them with arrest records.  The punitive detention caused by this practice is the detention attributable to the post-and-forfeit practice which would terminate detention at the station only if arrestees paid the "post and forfeit" amounts as opposed to detentions attributable to the arrests.

**4.**              The practice of funneling these questionable arrests into the "post and forfeit" procedure also shielded the arrests from prosecutorial and judicial review because arrests resolved through the "post and forfeit" procedure do not get referred to a prosecutor and never make it to court.  Nor are such arrests tested by the adversarial system in which a prosecutor prosecutes a case in open court before a judicial officer where the defendant has benefit of counsel.

**5.**              The practice allowed MPD officers to (among other things): (1) simply arrest people they encountered while patrolling instead of counseling them or reasoning with them or dealing with them in any accepted way, i.e., "policing" them; and (2) impose "time-outs" (arrests and brief detentions) on people who had committed no crime; and (3) "punish" people for perceived "offenses" to police authority (often called "contempt of cop") such as criticism of police misconduct conduct or questioning of illegal police commands by arresting them for charges which the MPD officers knew would not stand up to prosecutorial or judicial review and would result in dismissal the next "court" morning if referred to a prosecutor.

**6.**              Basically the practice allowed the MPD to briefly jail people and to fine them without first giving them a trial with all the rights which attach thereto such as judicial supervision and benefit of counsel.

**7.**              This case does not address the "post and ***trial***" procedure as it is administered by the prosecutors of the Office of the Attorney General of the District of Columbia

("OAG") in open court before judicial officers pursuant to D.C. Code § 16-704 or D.C. Code § 23-1321(c)(1) (B)(xii)(release prior to trial).  In the "post and trial" procedure, a person arrested on a traffic offense or other minor offense, at arraignment or subsequent hearings, represented by counsel in hearings conducted by a judicial officer in open court, is given the option of not attending future court hearings and not contesting a judicial forfeiture of collateral posted in lieu of proceeding with the case.  See District of Columbia v. Baylor, et al., 125 The Daily Washington Law Reporter 1665 (Monday, August 25, 1997)(Goodbread, J.)(describing history and operation of the "post and *trial*" procedure in Superior Court as it is administered by prosecutors in open court before judicial officers where the arrestee is represented by defense counsel).

**8.**          Nor does this case address the PD 61 procedure where people arrested are given a ticket and a 15 day period during which they may consult with counsel before electing free of the compulsion of detention whether to pay the ticket or ask for a trial date. Dingle v. District of Columbia, 571 F.Supp.2d 87, 96 (D.D.C. 2008)(officers used force and intimidation to try to get teenager to pay ticket issued under the PD 61 "post and forfeit" procedure rather than request trial date).

### Jurisdiction and Venue

**9.**          This Court has original jurisdiction over the § 1983 "post & forfeit" claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

**10.**          This Court has supplemental jurisdiction over the "post & forfeit" common law claim pursuant to 28 U.S.C. § 1367.

**11.**          Venue is appropriate in this District.  Each of the claims for relief arose in this judicial district and all events described herein occurred in the District of Columbia.

## PARTIES

**12.**          Mr. Scott and Mr. Pratt are residents of the District of Columbia and reside at 2905 Pomeroy Rd, SE. in the District.  Mr. Scott is a long time community activist involved in community affairs in the Barry's Farm, Parkchester, and Wade Road New Community areas of the District.  He participates in the Advisory Neighborhood Commission for the Barry's Farm, Parkchester, and Wade RD New community.  On 04/12/11 Mr. Scott was one of among 41 people including Mayor Vincent Gray and the City Council Chairman and five other Council members arrested outside the Capitol for protesting restrictions imposed by Congress on autonomy granted to the city in the last several years.  Mr. Pratt is Mr. Scott's stepson and lives in the same home.

**13.**          The District is a municipal corporation capable of being sued under D.C. Code § 1-102.

**14.**          During all events described herein, all police officers referred to herein, named or unnamed, unless otherwise specified, were police officers of the District of Columbia Metropolitan Police Department acting within the scope of that employment, in furtherance of the interests of the District of Columbia, and under color of the statutes, ordinances, rules, customs, and usage of the District of Columbia.

## DETAILS OF MR. SCOTT AND MR. PRATT'S ARREST, POST AND FORFEIT, AND RELEASE

**15.**　　　　　　　　Mr. Scott and Mr. Pratt's contact with MPD began about 8:00 pm on Saturday April 5, 2008, as described above.

**16.**　　　　　　　　Mr. Scott was with some of his family inside his apartment at 2905 Pomeroy Rd, SE. in the District at about 8:00 pm when he heard a commotion outside and saw flashing police lights near Birney PL around the corner of Pomeroy Road.

**17.**　　　　　　　　There appeared to be about 50 squad cars.

**18.**　　　　　　　　Since his children were outside, Mr. Scott went outside to investigate.

**19.**　　　　　　　　Approximately 5 or 6 other family members and friends were also outside, standing in front of Mr. Scott's building.

**20.**　　　　　　　　The disturbance was taking place around the corner from his building so Mr. Scott walked towards that area.

**21.**　　　　　　　　At the time, Mr. Scott had a cup of diet Pepsi soda in his hand.

**22.**　　　　　　　　As he proceeded to the area, an officer approached threatening and cursing Mr. Scott and ordering him to leave.

**23.**　　　　　　　　Mr. Scott expressed his right to be there and to know what was happening.

**24.**　　　　　　　　He also indicated his status as a community activist.

**25.**　　　　　　　　The officer told him to move his "black ass."

**26.**　　　　　　　　Mr. Scott was not expecting this treatment from the very people who were supposed to protect and serve him and his family.

**27.**　　　　　　　　Mr. Scott nonetheless turned to go back home.

**28.**　　　　　　　　While heading home, Mr. Scott heard someone screaming and hollowing behind him to "lock their black asses up, all of them."

**29.**          He looked back and saw an officer who looked to be totally out of control coming from around the corner where the incident had occurred.

**30.**          Even the other officers were looking at him, wondering what he was doing. The officer was screaming all sorts of obscenities.

**31.**          As soon as Mr. Scott stated he was going back home the officer got extremely angry.

**32.**          When Mr. Scott was on the sidewalk in front of his building the officer without provocation or justification grabbed Mr. Scott, pushed him up against a squad car, and handcuffed him.

**33.**          He pointed to the Pepsi in Mr. Scott's cup and said that's an open container of alcohol.

**34.**          Mr. Scott's family protested this ill treatment to the officers asking them why Mr. Scott was being arrested.

**35.**          Mr. Pratt standing a few feet away in the yard of their building also asked the officer why he was arresting Mr. Scott and asked him not to.

**36.**          An officer who appeared highly agitated, rushed to the Scott home where Mr. Pratt was standing and arrested Mr. Pratt as well saying he was being disorderly.

### At the Station

**37.**          The MPD officers then transported Mr. Scott and Mr. Pratt to the 4th District station house arriving there about 10:00 pm.

**38.**          Mr. Scott and Mr. Pratt were placed in holding cells with other persons.

**39.**          MPD officers there told Mr. Scott and Mr. Pratt that they had two options: if they wanted to come home that night they would have to pay money to "post and forfeit."

**40.**          Mr. Scott had to pay $25 to "post and forfeit" for POCA and Mr. Pratt had to pay $35.00 to "post and forfeit" for "disorderly conduct – loud and boisterous."

**41.**          The other option was a night in lock-up followed by transport to Superior Court the next morning.

**42.**          The MPD officers did not offer citation release, posting collateral (without forfeiting), or release on the Detention Journal.

**43.**          Both Mr. Scott and Mr. Pratt were entitled to release on the Detention Journal because each was arrested without probable cause.

**44.**          Both Mr. Scott and Mr. Pratt were entitled to post bail or collateral (without forfeiting) under D.C. Code § 23-1110(a).

**45.**          Both Mr. Scott and Mr. Pratt were entitled to citation release under D.C. Code § 23-1110(b).

**46.**          Neither had previous arrests in any jurisdictions, and none of the MPD officers had any reason to believe that either would cause injury to persons or damage to property or that either would fail to appear in answer to the citation.

**Mr. Scott**

**47.**          The officers charged Mr. Scott with the D.C. Code offense of "POCA," possession of an open container of alcohol.  D.C. Code § 25-1001(a)(1).

**48.**          Mr. Scott did not commit the elements of the offense nor did he commit any other offense.

**49.**　　　　　　　He was holding a glass with Pepsi without any alcohol in it.

**50.**　　　　　　　There was no probable cause to arrest Mr. Scott on any offense.

**51.**　　　　　　　Mr. Scott knew that if he did not pay the $25.00 "post and forfeit" amount he would have to spend at least one night in jail and then be transported to the Superior Court.

**52.**　　　　　　　Thus, being forced to choose between "post and forfeiting" and remaining in jail overnight for an offense he did not commit Mr. Scott "posted and forfeited" on "POCA – possession of an open container of alcohol," D.C. Code § 25-1001(a)(1), and paid the "post and forfeit" amount of $25.00.

### Mr. Pratt

**53.**　　　　　　　The officers charged Mr. Pratt with the D.C. Code offense of "disorderly conduct – loud and boisterous."  D.C. Code § 22-1321(1).

**54.**　　　　　　　Mr. Pratt did not commit the elements of the offense nor did he commit any other offense.

**55.**　　　　　　　Mr. Pratt was simply standing outside his apartment building exercising his First Amendment rights to free speech by asking the MPD not to arrest his stepfather.

**56.**　　　　　　　There was no probable cause to arrest Mr. Pratt on any offense.

**57.**　　　　　　　Mr. Pratt knew that if he did not pay the $35.00 "post and forfeit" amount he would have to spend at least one night in jail and then be transported to the Superior Court in the morning.

**58.**　　　　　　　Thus, being forced to choose between "post and forfeiting" and remaining in jail overnight for an offense he did not commit Mr. Pratt "posted and forfeited" on "disorderly conduct – loud and boisterous" and paid the "post and forfeit" amount of $35.00.

**Steps the MPD followed in booking Mr. Scott and Mr. Pratt when they elected the "post and forfeit" procedure**

**59.**        The only steps the MPD follows in booking a person electing the "post and forfeit" procedure is interviewing the arrestee, filling out a PD 163 (Arrest/ Prosecution form), filling out a PD 67 ("post and forfeit" form), checking databases for warrants or other holds, or reasons to decide the arrestee is a flight risk.

**60.**        At the point of signing the "post & forfeit" form, or within 15 minutes thereafter, all administrative steps incident to the arrest (such as booking, fingerprinting, identification and warrants checks) and release determinations, except non-discretionary ministerial acts, were completed.

**61.**        Once the necessary administrative steps incident to the arrest and the release determination were completed, Mr. Scott and Mr. Pratt were eligible to be released because at that point the MPD had no legitimate reason to hold them and it had decided not to refer his case for prosecution.

**62.**        Nonetheless Mr. Scott and Mr. Pratt were held at the station for several hours while officers processed their "post and forfeit."

## DISORDERLY CONDUCT AND POCA ARRESTS BY THE MPD DURING THE CLASS PERIOD

**Arrests for Disorderly Conduct during the Class Period**

**63.**        The District of Columbia has a longstanding practice of making arrests for disorderly conduct, especially DC Code § 22-1321(1) ("annoying others") and DC Code § 22-

1321(3) ("loud and boisterous conduct"), that are not supported by probable cause and the practice continued from as early as 2000 at least until February 2011 when the District enacted a new disorderly conduct statute and the MPD allegedly began training its officers in the new statute and the MPD resumed offering citation release to persons arrested on "collateral offenses" including disorderly conduct and POCA.

**64.**        In 2003 the Government of the District of Columbia Citizen Complaint Review Board, now called the Police Complaints Board Office of Police Complaints (the "Police Complaints Board") notified the Mayor and City Council in its 2003 annual report (the "CCRB Report") of the problems with the District's disorderly conduct statute, the MPD's deliberately indifference to the rights of persons regarding arrests for disorderly conduct, and the need for additional training.

**65.**        The 2003 CCRB Report issued by the Citizen Complaint Review Board specifically notified the District that the MPD was using the "post and forfeit" procedure (which at that time was not formalized by statute) to cover up arrests for disorderly conduct not supported by probable cause including retaliatory arrests and punitive arrests.

**66.**        A jury found in <u>Huthnance v. District of Columbia</u>, 06-1871 (RCL) that the District was deliberately indifferent to a known, widespread problem of improper disorderly conduct arrests by MPD officers.  <u>Huthnance v. District of Columbia</u>, 793 F.Supp.2d 183, 197-200 (D.D.C. 2011).

**67.**        The District did not appeal that finding.  <u>Huthnance v. District of Columbia</u>, District of Columbia Circuit Court of Appeals, Case # 11-7096, appellant District of Columbia's brief, Document # 1379602, filed 6/19/12.

**68.**        A written report[2] by plaintiffs' police experts (Dr. James Ginger and Chief Timothy J. Longo) in the <u>Huthnance</u> case and testimony offered by Chief Longo in the <u>Huthnance</u> trial indicated that the District's deliberate indifference to disorderly conduct arrests without probable cause continued at least through and including 2010.

**69.**        An analysis of PD-163 arrest reports for disorderly conduct ("loud and boisterous") from January 1, 2005 through May 31, 2005 conducted by Dr. Ginger and Chief Longo revealed serious problems with police operations, report writing, records management, training, and supervisory processes within MPD regarding arrest for disorderly conduct (loud and boisterous).  Longo report, ¶ 93, <u>Huthnance v. District of Columbia</u>, (RCL/JMF).

**70.**        Dr. Ginger wrote about the District's oversight of disorderly conduct arrests: "It is remarkable to find such lax controls on disorderly conduct arrests by the police in the 21st century."

**71.**        Moreover, Dr. James Ginger and Timothy J. Longo, Sr. found (as of 2010, the date of their report) that the MPD had done very little analysis or review of disorderly conduct arrests to see if the same problems continue to prevail and very little training to remedy past problems and that since receiving the CCRB Report in 2003, the MPD has failed to accomplish critically important tasks to address the problems with unfounded arrests.

**72.**        The District, according to the Longo Report, **as of 2009**, still had not conducted any meaningful analysis of disorderly conduct-loud and boisterous arrests to confirm they are being made on probable cause.  Longo Report, ¶ 102.

---

[2] Dr. James Ginger and Timothy J. Longo, Sr. conducted their analysis and gave testimony in the case of <u>Huthnance v. District of Columbia</u>, 06-1871 (RCL).  <u>See</u> <u>Huthnance v. District of Columbia</u>, 793 F.Supp.2d 183, 197-200 (D.D.C. 2011)(post trial motions) *aff'm'd at* <u>Huthnance v. District of Columbia</u>, 722 F.3d 371 (D.C. Cir. 2013).

**73.**            Mr. Longo stated: "The fact that the department waited at least 5 years to begin the process of conducting any analysis whatsoever as to disorderly conduct arrests causes me tremendous concern."  Id.

**74.**            The Longo report, produced in 2010, also found that the MPD did not adequately supervise disorderly conduct arrests.  Longo Report, ¶¶ 115 to 121.

**75.**            The MPD also inadequately trained officers in disorderly conduct arrests. Longo Report ¶¶ 122 to 146.

**76.**            As Dr. Ginger stated in his report, "it is apparent that weak training, poor police arrest and reporting practices, weak supervision, and the practice of post-and-forfeit, have combined to create a perfect storm."  Quoted in Longo report, ¶ 147.

**77.**            Thus from at least 2003 the District was on notice of a widespread problem of improper disorderly conduct arrests by MPD officers, the District took no steps to address the problem as of 2010, and so the District was deliberately indifferent to a known, widespread problem of improper disorderly conduct arrests by MPD officers.

**78.**            In addition to the other disorderly conduct cases cited above, Wesby v. District of Columbia, 841 F. Supp. 2d 20, 32 (D.D.C. 2012)  describes the arrest of twenty one persons on March 15, 2008 taken into custody and charged with disorderly conduct in consultation with and at the directive of a Police Department Commander, a Police Department Inspector, and a representative of the Office of the Attorney General, even though there was no evidence to support that charge, establishing a persistent, pervasive practice of arresting persons for disorderly conduct without probable cause, attributable to a course deliberately pursued by

official policy-makers, one that caused the deprivation of constitutional rights persons experienced.

**79.**         Investigation indicates that the pattern and practice and the District's deliberately indifference to disorderly conduct arrests without probable cause continued at least through and including 2011.

**80.**         There rates of arrests for disorderly conduct before and during the Class Period was much higher in the District than in comparable jurisdictions during the Class Period.

**81.**         Virtually all disorderly conduct arrests (where disorderly conduct was the only or the most serious charge) in the District before and during the Class Period were resolved through the "post and forfeit" procedure including during the Class Period.

**82.**         Most arrests and subsequent "post and forfeits" for disorderly conduct during the Class Period fit a well-known, well-documented profile of MPD officers making retaliatory arrests for "disorderly conduct" (that is, officers make unfounded disorderly conduct arrests as a way of harassing or punishing citizens, even when the citizen has committed no offense other than "talking back" to an officer or criticizing their conduct) and disposing[3] of the evidence of the arrest before prosecutorial review or judicial oversight or examination by defense attorneys in the adversarial system by offering the arrestee a choice between time in jail and during transport to Superior Court or release from the station house by "post & forfeit."

---

[3] Arrests disposed of through "post and forfeit" do not get referred to the prosecutor for prosecution so they get no prosecutorial or judicial review.  Longo Report ¶112.

**Arrests for POCA**

**83.**          The District of Columbia, through the MPD, has a long history of making arrests for POCA that are not supported by probable cause.

**84.**          For each fiscal year since fiscal year 2009 the Government of the District of Columbia Police Complaints Board Office of Police Complaints (the "Police Complaints Board") has been notifying the Mayor and

**85.**          City Council in its annual reports of the need for additional training regarding public drinking arrests (POCA) by MPD Officers on residential property.

**86.**          The District of Columbia has a serious problem with its officers arresting persons, especially persons who are members of discrete and insular minorities, without probable cause and then forcing them to "post and forfeit" on "POCA."

**87.**          Most arrests and subsequent "post and forfeits" for POCA during the Class Period fit a well-known, well-documented profile of MPD officers making retaliatory arrests for POCA (that is, officers make unfounded POCA arrests as a way of harassing or punishing citizens, even when the citizen has committed no offense other than "talking back" to an officer or criticizing their conduct) and disposing of the evidence of the arrest before prosecutorial review or judicial oversight or examination by defense attorneys in the adversarial system by offering the arrestee a choice between time in jail and during transport to Superior Court or release from the station house by "post & forfeit."

## "<u>STATION HOUSE RELEASES</u>[4]" OF PERSONS ARRESTED BY THE MPD

88.	Pursuant to MPD GO 502.05, "The Use of the Detention Journal" ("Detention Journal release"), the MPD is authorized to release from the station houses arrested persons whom the MPD has decided not to charge, including persons whose arrests or charges are not supported by probable cause.

89.	The Fourth Amendment, which permits warrantless arrests only upon a finding of probable cause, requires release on the Detention Journal for an arrest not supported by probable cause.

90.	District of Columbia statutes (D.C. Code § 23-1110 (a) and (b)(2); D.C. Code § 16-704(a)) authorize the MPD to make two types of "station house" releases of arrestees whom the MPD intend to charge with offenses: (1) release on citation, if the arrestees meet certain criteria designed to screen out flight risks and persons who are a danger to the community; and (2) release on "bail or collateral."

91.	In fact, D.C. Code § 23-1110 (b) **requires** the MPD to offer citation release to qualifying persons.

92.	The MPD does release arrestees from the station houses via the "post & forfeit" release procedure authorized by D.C. Code § 5-335.01 under the circumstances described below.

93.	But, during the Class Period, the MPD did not offer citation release or other forms of station house release to arrestees to whom it offered "post and forfeit" release.

---

[4] "Station house" release is release of an arrestee directly from an MPD district station or other MPD booking facility as opposed to transporting them to Superior Court for presentment and a release determination hearing or a "no-papering" decision which generally takes place the next day, or the day after that if the arrest is made on a Saturday.

## THE "POST & FORFEIT" PROCEDURE

**94.**           In 2005 the Mayor and City Council enacted a statute ("post and forfeit" statute) ratifying and defining the "post and forfeit" procedure and setting some inadequate criteria for the implementation of the "post and forfeit" procedure.  D.C. Code § 5-335.01 (effective on April 13, 2005).

**95.**           The purpose of the "post and forfeit" procedure is to provide a way for the District to collect fines without having to provide prosecutorial review or judicial process such as court supervised resolutions such as diversion or trials to people who have been charged with offenses.

**96.**           The "post and forfeit" amount for various "collateral offenses" (offenses which can be resolved using the "post and forfeit" procedure) is set by the Board of Judges of the Superior Court.

**97.**           The "post and forfeit" amount is in essence a criminal fine.

**98.**           The "post and forfeit" procedure is administered by the MPD according to MPD general orders.

### How a person elects the "post and forfeit" procedure

**99.**           The MPD do give a PD 67 form (Collateral/ Bond Receipt) to persons electing the "post and forfeit" procedure.

**100.**           The MPD does not provide arrestees with the elements of the offense they are charged with to review before electing the "post and forfeit" procedure.

**101.**           The MPD does not inform arrestees whether the MPD believes the arrestees' arrests or charges are supported by probable cause.

**102.**         The MPD does not provide arrestees with a copy of the PD 163 narrative setting out the facts the MPD contend provide probable cause or any other type of probable cause statement to review before electing the "post and forfeit" procedure.

### THE MPD FUNNELED ARRESTEES INTO THE "POST AND FORFEIT" PROCEDURE DURING THE CLASS PERIOD

**103.**         The District of Columbia, through the MPD, has a long history of using its coercive police powers and arresting people for any reason or no reason, and then taking the people to the station and funneling them into the "post and forfeit" procedure by giving them two choices: (1) "post and forfeit" for disorderly conduct or POCA or another "collateral offense;" or (2) spend a night or two in the lock up or Central Cellblock awaiting transport to the Superior Court where their cases would be "no-papered" because the arrests were not supported by probable cause and the MPD did not follow up on the arrests.

**104.**         In practice, during the class period the MPD applied the "post and forfeit" procedure to virtually all persons arrested on or charged with "disorderly conduct" or POCA.

**105.**         James Ginger reviewed 341 PD 163s ¶ 94 and found that 62% of the most problematic arrests for disorderly conduct were found in arrests that resulted in release through the post-and-forfeit procedure. Id. at ¶113.

**106.**         Based on the District's answers to interrogatories in the case of Huthnance v. District of Columbia, 06-1871 (RCL)(JMF) and other data (including in CJIS and LEADS (the MPD arrest booking databases) during the class period the MPD virtually never made releases on citation (an unsecured  promise to appear in court) or on "bail or collateral" (posting bail in an amount according to a schedule set by the Board of Judges to secure a promise to appear at a

subsequent court date) to persons charged with disorderly conduct, POCA, or other collateral offenses.

**107.**     The MPD enforced the disorderly conduct statute and the POCA statute in such a way during the class period such that the arrest, detention, and release under the "post and forfeit" procedure was itself the penalty the MPD imposed for the conduct for which it made the disorderly conduct and POCA arrests.

**108.**     The Mayor and the City Council were aware before and during the Class Period that the MPD funneled arrests for disorderly conduct and POCA and other collateral offenses into the "post and forfeit" procedure and enforced the disorderly conduct statute and the POCA statute in such a way during the Class Period such that the arrest, detention, and release under the "post and forfeit" procedure was itself the penalty the MPD imposed for the conduct for which it made the disorderly conduct and POCA arrests.

**109.**     The Mayor and the City Council were aware before and during the class period and acquiesced before and during the class period in the MPD's use of arrests and the "post and forfeit" procedure as a way of shielding its practice of making unfounded arrests for disorderly conduct and other collateral offenses from prosecutorial or judicial review of individual arrests.

**110.**     Numerous "12-309" notices and cases filed in Superior Court and District Court put the District on notice that the District had a serious problem before and during the Class Period with its officers arresting persons, especially persons who are members of discrete and insular minorities, without probable cause and then forcing them to "post and forfeit" on "disorderly conduct – loud and boisterous."  See e.g., Ricks v. District of Columbia, 05-1756

(HKK) (in September 2004 MPD officer arrests homeless man without probable cause, and then forces him to "post and forfeit" on "disorderly conduct – loud and boisterous" by offering him choice between night in jail and "post and forfeiting"); <u>Huthnance v. District of Columbia</u>, 06-1871 (RCL) (in 2005 MPD officers arrest tall woman without probable cause, describe her as "female impersonator" on the arrest report, and force her to "post and forfeit" on "disorderly conduct – loud and boisterous" by offering her choice between night in jail and "post and forfeiting"); <u>Dormu v. District of Columbia</u>, 08–00309 (HHK)( February 23, 2007 MPD officers arrest African American surgeon, and force him to "post and forfeit" on "disorderly conduct – loud and boisterous" by offering him choice between night in jail and "post and forfeiting"); <u>Fox v. District of Columbia</u>, 10-2118 (ABJ)(in December 2007 swarm of MPD officers arrested 63 year old man waiting for his wife outside CVS without probable cause, terrorized his wife, detained him for nine hours, and forced him to "post and forfeit" on "disorderly conduct – loud and boisterous" by offering him choice between weekend in jail and "post and forfeiting"); <u>Hodges v. District of Columbia</u>, 12-1900 (ABJ/JMF)(in 2008 MPD officers arrested Ms. Hodges' for protesting their mistreatment of her then husband forced her to "post and forfeit" on "disorderly conduct – loud and boisterous" by offering her choice between weekend in jail and "post and forfeiting"); <u>Jackson v. District of Columbia</u>, 12-1948 (ABJ/JMF)(in 2008 MPD officers arrested Mr. Jackson for cursing and forced him to "post and forfeit" on "disorderly conduct – loud and boisterous" by offering him choice between night in jail and "post and forfeiting"); <u>Flores v. District of Columbia</u>, 12-1989 (ABJ/JMF)( in 2008 MPD officers arrested Ms. Flores for protesting their mistreatment of her brother and boyfriend and forced her to "post and forfeit" on "disorderly conduct – loud and boisterous" by offering her choice between night

in jail and "post and forfeiting"); <u>Hammond v. District of Columbia</u>, 12-1990 (ABJ/JMF)( in

2008 MPD officers arrested Mr. Hammond, who is a listened special police officer for an agency

of the federal government and who holds a security clearance, for protesting their mistreatment

of his cousin and neighbors, and forced him to "post and forfeit" on "disorderly conduct – loud

and boisterous" by offering him choice between night in jail and "post and forfeiting"); <u>Dingle v.

District of Columbia</u>, 571 F.Supp.2d 87, 96 (D.D.C. 2008)(officers used force and intimidation

to try to get teenager to pay ticket issued under "citation post and forfeit" procedure rather than

request trial date); <u>Wesby v. District of Columbia</u>, 841 F. Supp. 2d 20, 32 (D.D.C. 2012) (on

March 15, 2008 MPD arrested twenty one persons at a bachelor party and charged them with

disorderly conduct in consultation with and at the directive of a Police Department Commander,

a Police Department Inspector, and a representative of the Office of the Attorney General, even

though there was no evidence to support that charge or any other); <u>Tuma v. District of Columbia</u>,

10-1248 2010 (JB)(on July 26, 2009 MPD officer arrests man without probable cause for

criticizing him and his fellow officers for assaulting a person they are arresting, calls him a

faggot, and then forces him to "post and forfeit" on "disorderly conduct – loud and boisterous"

by offering him choice between night in jail and "post and forfeiting").

## SUBSTANTIVE ALLEGATIONS FOR CLAIMS

### Claim 1

### § 1983 Liability of District of Columbia for failure to provide pre-deprivation notice

### required by the Fifth Amendment

**111.**         Mr. Scott and Mr. Pratt adopt by reference the contents of the preceding

paragraphs as if fully set forth herein.

**112.**                The due process clause requires a governmental agency to provide notice

and a hearing to persons before depriving them of liberty or property.

**113.**                The District did not provide pre-deprivation notice to Mr. Scott and Mr.

Pratt or the Post & Forfeit Class before detaining them and making them pay fines that they were

subject to arrest, detention, and imposition of fines without a trial or any adjudication of guilt or

probable cause by a neutral magistrate for "contempt of cop" type offenses.

**114.**                The District's conduct violated the 5th Amendment due process rights of Mr.

Scott and Mr. Pratt and the Post & Forfeit Class.

**115.**                Accordingly, Mr. Scott and Mr. Pratt and the Post & Forfeit Class are

entitled to damages and other relief as set forth below.

**Claim 2**

**§ 1983 Liability of District of Columbia for failure to provide a pre-deprivation trial before**

**imposing punitive detention and criminal fines as required by the Fifth Amendment**

**116.**                Mr. Scott and Mr. Pratt adopt by reference the contents of the preceding

paragraphs as if fully set forth herein.

**117.**                The due process clause guaranteed Mr. Scott and Mr. Pratt and the Post &

Forfeit Class a trial conducted by a judicial officer with benefit of counsel before detaining them

as punishment and making them pay criminal fines.

**118.**                The District did not provide a trial or any adjudication of guilt or probable

cause determination by judicial officer to Mr. Scott and Mr. Pratt or the Post & Forfeit Class

before punitively detaining them and making them pay fines for "contempt of cop" type

offenses.

**119.**          The government—federal, state, or local—may not deprive a person of liberty or property without due process of law.

**120.**          Accordingly, Mr. Scott and Mr. Pratt and the members of the Post & Forfeit Class are entitled to damages and other relief as set forth below.

**Claim 3**

**§ 1983 Liability of District of Columbia for Violations of Fourth Amendment by unreasonable seizures of persons and money**

**121.**          Mr. Scott and Mr. Pratt adopt by reference the contents of the preceding paragraphs as if fully set forth herein.

**122.**          The Fourth Amendment prohibits the District from making unreasonable seizures of persons or property.

**123.**          The District seized Mr. Scott and Mr. Pratt and the members of the Post & Forfeit Class without probable cause and seized their "post and forfeit" amounts against their will.

**124.**          The District's policy and practice was the moving force behind the violation of Mr. Scott and Mr. Pratt and the members of the Post & Forfeit Class's Fourth Amendment rights.

**125.**          Accordingly, Mr. Scott and Mr. Pratt and the members of the Post & Forfeit Class are entitled to damages and other relief as set forth below.

**Claim 4**

**§ 1983 Liability of District of Columbia for Violations of Substantive Fifth Amendment Rights by imposing criminal fines on persons whose arrests were not supported by probable cause**

**126.**         Mr. Scott and Mr. Pratt adopt by reference the contents of the preceding paragraphs as if fully set forth herein.

**127.**         D.C. Code § 5-335.01 implements an officially adopted policy promulgated by the Mayor and the City Council.

**128.**         The MPD implemented the into the "post and forfeit" procedure" procedure during the Class Period by forcing persons charged with collateral offenses into the "post and forfeit" procedure.

**129.**         The "post and forfeit" amount is in essence a criminal fine.

**130.**         The District of Columbia deprived them of that right without any basis.

**131.**         Moreover, the District's policy and practice of forcing persons such as Mr. Scott and Mr. Pratt who are arrested without probable cause and then forced to "post and forfeit" on disorderly conduct bears no rationale relationship the District may have in preventing criminal conduct.

**132.**         The District's policy and practice was the moving force behind the violation of Mr. Scott and Mr. Pratt's and the members of the Post & Forfeit Class's Fifth Amendment substantive due process rights.

**133.**         Accordingly, Mr. Scott and Mr. Pratt and the members of the Post & Forfeit Class are entitled to damages and other relief as set forth below.

**Claim 5**

**The "post and forfeit" procedure as implemented is void for vagueness**

**134.**          The preceding paragraphs are incorporated and restated as if stated fully herein.

**135.**          The District of Columbia, through the MPD, maintained during the Class Period a policy, custom or practice of arresting persons without probable cause and then forcing the persons to "post and forfeit" on disorderly conduct or POCA or some other collateral offense by forcing them to choose between "post and forfeiting" or spending a night in jail followed by transport to Superior Court for "no-papering" of the charges because the MPD does not offer them any other form of station house release.

**136.**          Under the Fifth Amendment the "post and forfeit" procedure is valid only if the post and forfeit charge is supported by probable cause regardless of whether the arrest was supported by some other charge.

**137.**          The post and forfeit procedure results in a fine and a disposition that "terminates" the prosecution, resembling a plea more than an arrest, and so the principles underlying rules governing informations under Superior Court Crim. Rule Proc. 7(a) and (c) (requiring "plain, concise and definite written statement of the essential facts constituting the offense charged") must apply to the "post and forfeit" procedure so the accused knows what he is "post and forfeiting" on so, if other coercive and abusive factors were removed, for example in a "post and trial" context, he could make an intelligent and voluntary decision whether to post because different offenses have different elements and different consequences.

**138.**     Construing the post and forfeit procedure to allow the MPD discretion to take post and forfeit amounts on a charge not supported by probable cause as the MPD with the acquiescence of the Mayor and City Council did during the Class Period rendered the post and forfeit procedure void for vagueness and overbroad.

**139.**     Allowing the MPD to select any offense for the "post and forfeit" offense, even one not supported by probable cause, left the definition of the terms of the post and forfeit procedure (including not just "post and forfeiting" but also the charge "posted and forfeited" on) to the MPD and arresting and charging officers, and thereby invited arbitrary, discriminatory and overzealous enforcement.

**140.**     Allowing the MPD to arrest for one charge but to "offer" post and forfeit on another unconstitutionally allowed the MPD to "set" or "admit" to bail as opposed to taking bail pursuant to a schedule set by the Board of Judges by allowing them to select a charge (with a different bail or collateral amount) the arrestee did not commit and set collateral amounts in violation of D.C. Code § 23-1321(a)(judicial officer sets bail) and D.C. Code § 22-1110 and D.C. Code § 5-335.01(g)(MPD must use collateral amounts established by Board of Judges).

**141.**     Accordingly, Mr. Scott and Mr. Pratt and the Post & Forfeit Class are entitled to damages and other relief as set forth below.

## Claim 6

### Liability of District of Columbia for common law Conversion

**142.**     The preceding paragraphs are incorporated and restated as if stated fully herein.

**143.**         The District is liable in conversion for illegally taking money from Mr. Scott and Mr. Pratt and the members of the Post & Forfeit Class pursuant to the "post and forfeit" procedure during the Class Period.

**144.**         The District, through its agents, during the Class Period participated in (1) an unlawful exercise, (2) of ownership, dominion, or control, (3) over the personal property of Mr. Scott and Mr. Pratt and the members of the Post & Forfeit Class, (4) in denial or repudiation of their rights thereto.

**145.**         At all relevant times its agents were acting within the scope of their employment pursuant to an official policy of the Mayor and the City Council.

**146.**         Accordingly, Mr. Scott and Mr. Pratt and the Post & Forfeit Class are entitled to damages and other relief as described below.

## RULE 23 ALLEGATIONS

**147.**         Mr. Scott and Mr. Pratt on behalf of themselves and the Post & Forfeit Class bring this action under Rules 23(a), 23(b) (2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of each person who: (i) in the period beginning three years before the date of filing of the original complaint in this case and going forward until the case is terminated; (ii) was in the custody of the MPD; (iii) was released via the MPD's "post & forfeit" procedure; and (iv) was made to pay the collateral amount pursuant to that release.

**148.**         Certification of this class under Federal Rule of Civil Procedure 23(b)(2) is appropriate, because the District of Columbia has a policy, pattern, and practice for each claim that has uniformly affected all members the class, and injunctive relief and declaratory judgment and a judgment against the District will benefit each and every plaintiff and class member.

**149.**          The class is entitled to injunctive relief including restitution of the "post and forfeit" amounts paid and sealing of their arrest records.

**150.**          The class is entitled to injunctive relief including enjoining the District from implementing any provision of D.C. Code § 5-335.01.

**151.**          The class is entitled to other injunctive relief, for example, setting up an independent monitor to supervise the MPD's release system to ensure that all arrestees entitled to release under the Detention Journal or on citation or bond or collateral are offered those release options and to prevent the District from continuing to condition releases on non-refundable payments of money, and other relief as may be just.

**152.**          Mr. Scott and Mr. Pratt and the class are entitled to declaratory judgment against the District that D.C. Code § 5-335.01 as implemented during the Class Period is unconstitutional.

**153.**          Certification of a class under Federal Rule of Civil Procedure 23(b)(3) is also appropriate, in that common questions of law and fact predominate over any individual questions, and class action treatment is superior for the fair and efficient adjudication of these class claims as detailed below.

**154.**          The class is entitled to monetary relief.

**155.**          Regarding Mr. Scott and Mr. Pratt and the Post & Forfeit Class, there are no individual questions on the issue of liability, because all members of the Post & Forfeit Class are injured by the same policy and practices.

**156.**          Among the questions of law and fact common to the classes are:

**a.**     whether D.C. Code § 5-335.01 ("post and forfeit" procedure statute) on its face violates the Fourth Amendment;

**b.**     whether D.C. Code § 5-335.01 as applied violates the Fourth Amendment;

**c.**     whether D.C. Code § 5-335.01 on its face violates either substantive due process or procedural due process under the Fifth Amendment;

**d.**     whether D.C. Code § 5-335.01 as applied violates either substantive due process or procedural due process under the Fifth Amendment;

**e.**     whether the District has a practice of practically never offering citation as a release option to persons arrested on "collateral offenses;"

**f.**     whether the District has a policy or practice of arresting persons on "collateral offenses" such as disorderly conduct especially § 22-1321(1) ("annoying others") and § 22-1321(3) ("loud and boisterous conduct") and POCA without probable cause;

**g.**     whether during the Class Period the District had a policy and practice of forcing persons charged with collateral offenses especially disorderly conduct and POCA to elect the "post and forfeit" procedure;

**h.**     whether D.C. Code § 22-1110 required MPD to offer qualifying arrestees citation release;

**i.**     whether such practices, if found to exist, violate any of the Fourth or Fifth Amendments;

**j.**     whether plaintiffs and the members of the classes and future members are entitled to equitable relief, and, if so, what is the nature of that relief;

**k.**     whether determination of damages suffered by the class can be awarded by a jury setting a damages matrix the class provides the basis for determination of all class members' damages.

**l.**     whether determination of damages suffered by a statistically representative sample of the class provides the basis for determination of all class members' damages.

**157.**     The Post & Forfeit Class is so numerous that joinder of all members is impracticable.  The exact number of Post & Forfeit Class members is unknown to plaintiffs at this time, but figures released by the District of Columbia concede that each year over the last 5 years approximately 5,000 people are released under the MPD administered post and forfeit program.

**158.**     Mr. Scott and Mr. Pratt's "post & forfeit" claim is typical of the claims of the other members of the Post & Forfeit Class, because Mr. Scott and Mr. Pratt and all other members of the Post & Forfeit Class were injured by exactly the same means, that is, by the District's "post & forfeit" release policy or practice.

**159.**     Mr. Scott and Mr. Pratt on behalf of himself and the Post & Forfeit Class will fairly and adequately protect the interests of the members of the Post & Forfeit Class and has retained counsel who is competent and experienced in complex federal civil rights class action litigation.

**160.**     Mr. Scott and Mr. Pratt on behalf of himself and Post & Forfeit Class have no interests that are contrary to or in conflict with those of the class or Post & Forfeit Class.

## CLASS RELIEF DEMANDS

Mr. Scott and Mr. Pratt on behalf of themselves and all other members of the Post & Forfeit Class respectfully request that this Court grant the following relief:

**A.**          Enter judgment in their favor on all of their claims;

**B.**          Declare the "post and forfeit" procedure under D.C. Code § 5-335.01 unconstitutional and enjoin the District from implementing any provision of D.C. Code § 5-335.01.

**C.**          Award Mr. Scott and Mr. Pratt and the putative class members' nominal damages in connection with any declaration that D.C. Code § 5-335.01 is unconstitutional on its face.

**D.**          Grant a jury trial on all claims so triable.

**E.**          Declare that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) and certifying the Post & Forfeit Class, and designating Mr. Scott and Mr. Pratt as the proper representative of the Post & Forfeit Class and appointing William Claiborne as class counsel.

**F.**          Declare that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b) (2) and 23(b)(3).

**G.**          Award all Post & Forfeit Class plaintiffs and class members injunctive relief in the form of restitution of the "post and forfeit" amounts paid and sealing their arrest records;

**H.**          Award all plaintiffs and class members compensatory and consequential damages in an amount to be determined at trial;

**I.**　　　　　Award plaintiffs attorneys' fees and costs incurred in bringing this action under

42 U.S.C. § 1988 or as determined under the "common fund" rule; and

**J.**　　　　　Grant such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579

Counsel for Mr. Scott and Mr. Pratt on behalf of themselves and the putative class members

2020 Pennsylvania Ave., N.W
Suite 395
Washington, DC 20006
Phone 202/824-0700

claibornelaw@gmail.com

## **JURY DEMAND**

Plaintiffs demand a jury of six as to all claims so triable.

/s/William Claiborne/s/
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for Plaintiffs
and the Post & Forfeit Class